By the Court,

Bronson, J.
There are several reasons why there was no error in refusing the plaintiff's motion for an adjournment. 1. The motion was not made until after the jury had been empannelled, and it then came too late to be claimed as a right. (Fink v. Hale, 8 John. R. 437.) 2. The plaintiff swore that he had served notice of an application for a commission, and recited the contents of the notice; but he did not swear that the matters contained in the notice were true. 3. If he had sworn to the truth of the notice, it would not have helped the case; for the notice does not state that the person named was a material witness, hut only that he “ is or may be a material witness.” 4. The notice states that the witness “is in the county of Chenango,” without saying that he resided there, or that he intended to remain there for a single day before returning to the county of Oneida. (Statutes of 1838, p. 232, § 2; Pooler v. Maples, 1 Wend. 65.) The plaintiff was not entitled to a commission, and consequently not to an adjournment.
The only remaining objection is, that the justice had no jurisdiction, because he was a tavern-keeper; and on this ground, it is said, the common pleas proceeded in reversing the judgment. There is nothing in the case to show when Gray became a *79 tavern-keeper. For aught that appears he may have been such at the time he was elected a justice of the peace; and then, as I read the statute, he had jurisdiction. (2 R. S. 226, § 6.) It is said, and such is undoubtedly the rule, that every change of phraseology in the revision of a statute, does not necessarily work a change of construction.(a) But here the change in phraseology is so. great and striking that we cannot say, without doing violence to language, that the present statute means the same thing as the former one. From 1801 to 1824 the provision on this subject was as follows: “ No justice of the peace, being an inn or tavern-keeper, or living in a house where a tavern is kept, shall try any cause by virtue of this act.” (1 Kent & Rad. 502, § 20; 5 Web. 384, § 18, act of 1808; 1 R. Laws of 1813, p. 397, § 19.) In 1824 the same enactment was substantially repeated, with the exception of the words, “or living in a house where a tavern is kept,” which were omitted. (Stat. of 1824, p. 292, 28.) Then came the revision of 1830, where the statute on this subject reads as follows: “If after the election of any person as a justice of the peace, he shall become an inn-holder or tavern-keeper, in fact, he shall not have any power or jurisdiction under the provisions of this title; but he may issue execution upon any judgment actually rendered by him before he became so disqualified.” (2 R. S. 226, § 6.) I cannot bring my mind to the conclusion that this statute'covers so much ground as the old one. The former law plainly denied jurisdiction to a justice of the peace who was at the time a tavern-keeper, without any reference to the time when he became such, or when he was elected to the office; while the present law only denies jurisdiction when the justice becomes a tavern-keeper after his election to the office. It leaves it open to the people of the town, if such be their will, to have rum and justice dispensed at the same place, and by the same hand. It was not enough to prove that Gray was a tavern-keeper at the *80 time of the trial, without also showing that he (became such after he was elected a justice of the peace.
It is said that the statute which was passed to confirm the official acts of Gray, and relieve him from liabilities' and forfeitures, (Stat. of 1843, p. 222, § 1, 2,) proves that he became a tavern-keeper after he was elected a justice of the peace. It hardly affirms so much as that, for it does not state when he was elected. But what is more conclusive, the legislature has no jurisdiction to determine facts touching the rights of individuals.(b)
The judgment of the common pleas should he reversed, and that of the justice affirmed.
Ordered accordingly.

 See Matter of Theriat v. Hart, (9 Hill, 380, 1,) and the cases there cited in note (b).

 In Elmendorf v. Carmichael, (4 Litt. Rep. 472, 478,) the question arose whether the preamble of a private statute could be used as evidence of the matters recited in it, and the court said: “ The facts recited in the preamble of a private statute fnay be evidence between the commonwealth and the applicant or party for whose benefit the act was passed. But as between the applicant and another individual whose rights are affected, the facts recited ought not to be .evidence. We well know that such applications are made frequently ex parte: and if they are not entirely so, but the party affected appears and resists the statute, it is very questionable whether the facts recited ought to be evidence in a future contest. The legislature, in all its enquiring forms, by committees, makes no issue, and in their discretion may or may not coerce the attendance of witnesses, or the production of records, and are frequently not bound by those rules of evidence applicable to an issue properly formed, the trial of which is an exercise of judicial power. Once adopt the principle that such facts are conclusive or even prima facie evidence against private rights, and many individual controversies may be prejudged, and drawn from the functions of the judiciary into the vortex of legislative usurpation. The appropriate functions of the legislature are to make laws to operate on future incidents, and. not the decision or forestalling of rights accrued or veste'd under previous laws. Hence, such a preamble as the present ought, in such a controversy, to be taken to answer the purpose for which it was intended; that is, an, apology for the passage of. the act, and the reason why the legislature so acted. Such a preamble is evidence that the facts were so represented to the legislature, and not that they are really true.”
But where an information for a libel contained an introductory averment that great outrages had been committed in certain parts of the country, the preamble of an act of parliament, reciting the existence of outrages of that description, was held admissible for the purpose of proving the averment. (Rex v. Sutton, 4 Maule & Selw. 532.) See also Greenl. Ev. 538, § 491; 1 Phill. Ev. 318.